UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| HILLARY L.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 4:21cv48 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since February 9, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: vestibular migraines; vertigo;

        fibromyalgia; obesity; generalized anxiety disorder (GAD); and depressive disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), as the claimant can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; and sit, stand, and/or walk up to 6 hours each in an 8-hour workday. The claimant can never climb ladders, ropes or scaffolds but can frequently climb ramps and stairs; and frequently balance, stoop, kneel, crouch, and crawl. The claimant can have no concentrated exposure to work at unprotected heights or around moving mechanical parts. The claimant can occasionally operate a motor vehicle. The claimant can have no more than concentrated exposure to extreme heat or vibration. The claimant can also have no concentrated exposure to loud noise without the use of hearing protection. The claimant is able to perform simple, routine tasks. The claimant can occasionally interact with coworkers, supervisors, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on May 18, 1982 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 9, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 69-77).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits,

leading to the present appeal.

Plaintiff filed her opening brief on March 16, 2022.  On April 25, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on May 13, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 5 was the determinative inquiry.

On February 11, 2019, Plaintiff was seen at the Indiana University Health for symptoms of anxiety and insomnia (Tr. 787, 790). She reported improved symptoms since starting Trazodone but developed fatigue. She indicated that her legs felt "like jello" and she was dizzy (Tr. 791). She had a history of vestibular migraines. *Id*. Plaintiff was diagnosed with generalized anxiety, primary insomnia, weakness of the legs, fatigue, low vitamin D and low iron (Tr. 797). A neurology

4

evaluation was recommended (Tr. 798).

Neurologist Scott Sanders, M.D., evaluated Plaintiff for acute dizziness with lightheadedness and loss of balance on February 18, 2019 (Tr. 552). Plaintiff reported fatigue, ringing in her ears, neck pain, nausea, headaches, anxiety, and heat intolerance (Tr. 553). Dr. Sanders diagnosed unsteadiness, vestibular migraines, and migrainous dizziness (Tr. 554). He prescribed Amitriptyline. *Id*.

On February 21, 2019, Plaintiff was seen by Carol Cook, M.S.W., A.C.S.W., L.C.S.W., at Alpine Health for her anxiety (Tr. 1003). Mental status examination revealed an anxious affect. *Id*.

On March 13, 2019, Plaintiff had a follow-up for her vestibular migraines (Tr. 813, 816). She described vertigo/problems with her balance (Tr. 816). When seen on March 18, 2019, Plaintiff complained of throbbing headaches associated with photophobia, phonophobia, and vertigo (Tr. 826, 830). Her symptoms worsened with any activity, bright/flashing lights, and loud sounds (Tr. 830). Her diagnoses were dizzy spells, vestibular migraine, anxiety, vertebral artery insufficiency, and daily/severe headaches or mixed headaches with numbness and tingling in both hands (Tr. 831). She was started on Divalproex and Naproxen. *Id*.

On March 21, 2019, Plaintiff was seen by Ms. Cook for her anxiety (Tr. 1005). She continued to exhibit an anxious affect. *Id*. When Plaintiff returned to Dr. Sanders on March 28, 2019, she described persistent dizziness and loss of balance (Tr. 958). Dr. Sanders started Plaintiff on Propranolol. *Id*. The following day, Plaintiff reported worsening anxiety attacks with overall worse anxiety because of her increasing migraine symptoms (Tr. 856, 860). Clonazepam was added to her medication regimen (Tr. 861).

When seen in the neurology clinic on April 11, 2019, Plaintiff described persistent headaches (Tr. 867, 871). They only improved if she laid down (Tr. 872). She was prescribed

5

Emgality, Baclofen, and Acetazolamide (Tr. 873). At a visit with Ms. Cook on April 24, 2019, Plaintiff expressed frustration over having testing that did not show a cause of her headaches (Tr. 1007). She continued to be anxious. *Id*. On May 1, 2019, Plaintiff received Botox injections (Tr. 907). At a visit to the pain clinic at Indiana University Health on May 15, 2019, Plaintiff reported neck pain and headaches (Tr. 936). A physical examination found taut, tender bands of muscle tissue along the cervical/ thoracic/lumbar paraspinal areas and 16 out of 18 positive fibromyalgia tender points (Tr. 936-937). She was diagnosed with intermittent extremity numbness likely related to headaches, cervicogenic headaches, vestibular migraines, chronic dizziness, anxiety, and fibromyalgia (Tr. 937). Plaintiff was given both trigger point injections and occipital nerve blocks while in the office that day (Tr. 937-938). She was also started on Neurontin (Tr. 937).

On May 23, 2019, Plaintiff told Ms. Cook she felt "downtrodden" by the impact of her migraines (Tr. 1011). She exhibited an anxious and dysphoric affect. *Id*. Similar findings were noted at the next therapy session on June 9, 2019 (Tr. 1013). At the next neurology follow-up, on June 24, 2019, Plaintiff's headaches had improved but she had persistent balance problems (Tr. 956-957). Vestibular rehab was recommended (Tr. 957). On July 18, 2019, Plaintiff discussed her ongoing frustration and anxiety during a therapy session (Tr. 1015). Similar findings were noted at the next therapy visit, on August 13, 2019 (Tr. 1017). Plaintiff was anxious, dysphoric, and had feelings of guilt. *Id*.

On August 21, 2019, Plaintiff had an in-depth neuropsychological evaluation (Tr. 970-977). Psychological testing revealed severe depressive symptoms on the Beck Depression Inventory (Tr. 974). Plaintiff was also found to have severe anxiety on the GAD-7 test. *Id*. She was advised to continue counseling and medication management (Tr. 976). Ms. Cook discussed the test results with Plaintiff at her next therapy visit, on September 10, 2019 (Tr. 1028).

On September 26, 2019, Plaintiff returned to Dr. Sanders, reporting headaches and unsteadiness (Tr. 954). Dr. Sanders diagnosed migraines and migrainous dizziness (Tr. 955). He restarted Amitriptyline. *Id*.

On October 21, 2019, Plaintiff was seen at Alpine Health for a behavioral health evaluation (Tr. 1035). A mental status examination revealed fair judgment and insight, fair memory with difficulty remembering certain things, and fair to good attention/concentration (Tr. 1032, 1036). Plaintiff was diagnosed with generalized anxiety disorder, major depression, and somatization symptom disorder (Tr. 1036). Lamictal was prescribed. *Id*. At a therapy visit with Ms. Cook on November 6, 2019, Plaintiff admitted to some improvement since starting Lamictal (Tr. 1038). On November 19, 2019, Plaintiff had a psychiatric follow-up and her Lamictal was refilled (Tr. 1040-1043).

On December 30, 2019, Plaintiff told Dr. Sanders that she was doing better. She was advised to continue vestibular rehab and treatment with Propranolol and Elavil (Tr. 952-953). At a therapy session with Ms. Cook on January 21, 2020, Plaintiff exhibited an anxious affect (Tr. 1061). On February 24, 2020, Plaintiff continued to report anxiety and frustration over her health issues (Tr. 1063). She was prescribed Lamictal and Klonopin (Tr. 1065-1066). When seen for therapy on March 4, 2020, Plaintiff continued to exhibit an anxious affect (Tr. 1067). On May 26, 2020, Plaintiff described persistent migraines (Tr. 1077). When seen on June 15, 2020, she was "having a lot of anxiety" (Tr. 1081). The mental status examination confirmed her affect was anxious. *Id*.

At the hearing before the ALJ, Plaintiff testified that the primary reason she is unable to work is her dizziness/vertigo and associated headaches (Tr. 156). As a result, she has difficulty focusing. She also experiences weakness in her arms and legs and a sensation that her legs are

7

going to give way. *Id*. Plaintiff also suffers from anxiety (Tr. 157). Her anxiety worsens when she is around other people (Tr. 158). Plaintiff lives with her husband and three children (Tr. 148). She can only do household chores for a few minutes before she needs to sit down and rest because of her balance issues and dizziness (Tr. 159). Any physical activity also triggers headaches (Tr. 160). Plaintiff's husband does the grocery shopping. *Id*. She reported having Botox, but it did not help (Tr. 158). She also had Emgality injections, which helped, but her insurance stopped covering them. *Id*.

In support of remand, Plaintiff argues that the hypothetical question posed to the VE was flawed. Specifically, Plaintiff asserts that the hypothetical did not accurately describe all of her mental limitations. The ALJ found that Plaintiff has "moderate" limitations in (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace (Tr. 71). However, the ALJ's hypothetical to the VE only limited Plaintiff to simple, routine tasks, and occasional interactions with co-workers, supervisors, and the public (Tr. 165-166). Plaintiff argues that although the restriction to simple, routine tasks could ostensibly account for the "moderate" restriction found in Plaintiff's ability to understand, remember, or apply information and the restriction to occasional interactions with others is consistent with other findings made by the ALJ, the hypothetical does not describe any limitations in Plaintiff's ability to concentrate over a period of time, persist at tasks, or perform tasks at a particular pace over the course of a workday or workweek despite the ALJ's finding that Plaintiff is moderately limited in these areas.

The Seventh Circuit has repeatedly remanded cases where the ALJ found moderate restrictions in concentration, persistence, or pace, but failed to include these restrictions or similar limitations in the hypothetical to the VE, and instead limited the claimant to simple, routine,

8

repetitive or unskilled work, as was the case here. *See e.g. Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015). This Court agrees with Plaintiff that the hypothetical in this instance was flawed, and that remand is warranted on this point.

Plaintiff next argues that the ALJ failed to properly evaluate her subjective statements. The relevant regulations describe a two-step process for evaluating a claimant's subjective statements. First, the ALJ must determine whether the symptoms alleged are supported by objective evidence that could reasonably produce the symptoms alleged. Second, the ALJ must evaluate the claimant's subjective statements as to the intensity, persistence, and functionally limiting effects of those symptoms considering the entire record. *See* 20 C.F.R. § 404.1529. A claimant must provide both subjective testimony and objective evidence to qualify for disability benefits. However, objective evidence need not prove the severity of the claimant's testimony, only that the claimant has an impairment capable of causing the complaints.

SSR 16-3p directs the ALJ to consider a number of factors before making a conclusion regarding the validity of a claimant's testimony on her symptoms and resulting limitations, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other relevant factors concerning the individual's functional limitations and restrictions.

In the present case, the ALJ acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found Plaintiff's

9

statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (Tr. 75). He then suggested that Plaintiff's allegations conflict with evidence that she can engage in some activities of daily living. He noted that vestibular testing was normal. The ALJ also found it significant that Plaintiff's migraines responded to Botox injections and oral medication. The ALJ also noted that Plaintiff's depression and anxiety improved with treatment. *Id*.

Plaintiff argues that the ALJ's evaluation of her subjective statements is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). Plaintiff contends that the ALJ erred by discounting Plaintiff's allegations because she can perform some activities of daily living. Plaintiff points out that she did not report engaging in any activities that contradict her allegations or that establish the ability to perform full-time work on a sustained basis. This Court agrees that the ALJ's reliance on such evidence is error. *See e.g. Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (collecting cases for holding that the failure of ALJs to recognize the difference in performing activities of daily living with flexibility and performing to the standards required by an employer "is a recurrent, and deplorable feature of opinions by administrative law judges in social security disability cases"); *Childress v. Colvin*, 845 F.3d 789, 792-793 (7th Cir. 2017) (internal quotations omitted) ("[W]orking sporadically or performing household chores are not inconsistent with being unable to engage in substantial gainful activity").

Regarding Plaintiff's mental impairments, the pertinent regulation, 20 C.F.R. Pt. 404, Appendix 1 of Subpart P § 12.00 (D)(3)(a), states that: "[T]he fact that you have done, or currently do, some routine activities without help or support does not necessarily mean that you do not have a mental disorder or that you are not disabled. For example, you may be able to take care of your personal needs, cook, shop, pay your bills, live by yourself, and drive a car. You may demonstrate

10

both strengths and deficits in your daily functioning." *See also Bauer v. Astrue*, 532 F.3d 606, 608-609 (7th Cir. 2008)(holding that the fact the claimant could dress appropriately, shop for food, prepare meals, perform chores, take care of hygiene, and care for a son only meant that Plaintiff was "not a raving maniac who needs to be locked up" but did not contradict finding of mental disability).

Plaintiff also contends that the ALJ erred by focusing on evidence that vestibular testing was normal. Plaintiff points out that vestibular migraines cannot be diagnosed or assessed using any objective testing. Additionally, 20 C.F.R. § 404.1529(c)(2) states that a claimant's allegations cannot be rejected "because the available objective medical evidence does not substantiate your statements." *See also* SSR 16-3p ("[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques"). The Seventh Circuit has also made clear that subjective "complaints…need not be confirmed by diagnostic tests." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (collecting cases); *see also Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (finding that a "recurrent error made by the Social Security Administration's administrative law judges" is the conclusion that disabling symptoms must be substantiated by particular "objective" testing).

Plaintiff further asserts that the fact that her symptoms have modestly improved with treatment does not mean she is not disabled. As the Seventh Circuit has commented, "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce…" *Scott v. Astrue*, 647 F.3d 734, 739-740 (7th Cir. 2011). Plaintiff notes that, here, here is no evidence that Plaintiff has had significant and sustained improvement to a degree that conflicts with her allegations or that indicates she can perform a full-time job on a sustained basis. This is particularly true in the context of Plaintiff's mental impairments. Because "the work

11

USDC IN/ND case 4:21-cv-00048-WCL   document 18   filed 05/23/22   page 12 of 12

environment is completely different from home or a mental health clinic" for those who suffer from mental disorders, observations contained in a treating physician's notes that the claimant's condition is "stable and well controlled with medication" do not contradict a determination that a claimant is disabled. *Morales v. Apfel*, 225 F .3d 310, 319 (3d Cir. 2000). *See also Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (finding that "hopeful remarks" in clinic notes that claimant was doing "fairly well" or "quite well" were insufficient to undermine a finding of disability for the claimant).

Thus, for the above reasons, remand is required for a proper evaluation of Plaintiff's subjective symptoms.

As this case is being remanded on the above issues, the Court will not address Plaintiff's argument concerning the Appeals Council's ruling finding that additional opinions from Dr. Sanders and Ms. Cook, submitted after the hearing, do not show a reasonable probability that they would change the outcome o the ALJ's decision. (Tr. 2).

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: May 23, 2022.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court

12